```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

W. JEFFREY BOSTIC,

       Plaintiff,

v.                                        Civil Action No. 2:15-12723

DRUMMOND LTD.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is a motion to dismiss, filed by defendant Drummond Company, Inc. ("DCI") on September 1, 2015.

### I. Background

Bostic filed this action on June 5, 2015, in the Circuit Court of Kanawha County claiming that DCI wrongfully discharged him on the basis of age in violation of the anti-discrimination provisions of West Virginia Code section 5-11-1 et seq. On August 26, 2015, DCI removed, invoking this court's diversity jurisdiction over the action.

Bostic is a resident of West Virginia. In his complaint he alleges that DCI is an Alabama corporation with mining operations in the country of Colombia. Pl. Compl. ¶¶ 2, 4, 6; Aff. of Curtis W. Jones ¶¶ 6, 8. In 2013, DCI hired Bostic as the "Superintendent of Highwall Mining Operations" at

one of its mines in Colombia.  Pl. Compl. ¶ 6.  He alleges that DCI recruited him for the position through persons living in Beckley, West Virginia.  Id. at ¶ 3.

"Typically, [DCI's] crew," which evidently included Bostic, "worked two weeks in Colombia before returning home for one week, and then repeated the process again."  Id. ¶ 14.  In March of 2015, DCI fired Bostic via telephone to Bostic at his home in West Virginia.  Id. at ¶ 15.  Bostic's replacement was a West Virginia resident whom Bostic had helped recruit to DCI.  Id.

On September 1, 2015, DCI filed a motion to dismiss for lack of personal jurisdiction.  DCI first argues that it was not Bostic's employer and that Drummond Ltd., an Alabama limited partnership and affiliate of DCI, was Bostic's actual employer.  DCI also argues that Bostic has failed to allege facts sufficient to show that DCI or Drummond Ltd. purposefully availed itself of the privilege of conducting activities in West Virginia, and that, as a result, it is not constitutionally reasonable for this court to maintain jurisdiction over either party in this action.  Drummond's Mem. in Supp. of Mot. to Dismiss at 2, n.2 and 5-6.  Bostic responded stating that Drummond Ltd. was his employer and should be the proper defendant in the case.  Bostic argues that Drummond Ltd.

2

purposefully availed itself of the privilege of conducting activities in West Virginia through its actions within West Virginia, that his claim arises out of Drummond Ltd.'s contacts in West Virginia, and that this court's jurisdiction over his claim is constitutionally reasonable. Pl. Resp. at 6-7.

On September 22, 2016, after the motion to dismiss was fully briefed, the parties agreed that Drummond Ltd. was the proper defendant and stipulated to substitute it for DCI as the defendant in this case. See Stipulation. Although the allegations in the complaint refer to DCI, the court finds that the parties additionally intended to agree to substitute Drummond Ltd. for DCI in the allegations in the complaint inasmuch as Drummond Ltd., not DCI, was Bostic's employer. As noted, in its motion to dismiss and accompanying memorandum and reply, then defendant DCI argues that the court does not have personal jurisdiction over it or Drummond Ltd. See Drummond Mem. in Supp. of Mot. to Dismiss at 2, n. 2; see also Reply at 3, n. 1 (stating "even if this case were brought against [Bostic's] actual employer Drummond Ltd., for reasons explained in the initial memorandum, this Court also lacks personal jurisdiction over Drummond Ltd."). The court also finds that the parties intended for Drummond Ltd. to be substituted for DCI in the pending motion to dismiss and that Drummond Ltd. still

intends to pursue the motion to dismiss on the grounds that the court does not have personal jurisdiction over it, for the reasons stated in DCI's motion to dismiss, accompanying memorandum, and reply brief.  Accordingly, from this point on, the court will refer to the briefing on the motion to dismiss as though it was filed by Drummond Ltd.

## II. Personal Jurisdiction

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence."  New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).  "But when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."  Id.  (citations omitted) (citing Combs, 886 F.2d at 676, and In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997)); see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); cf. Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004)

4

("When a district court rules on personal jurisdiction without holding an evidentiary hearing, we view the facts in the light most favorable to the plaintiff and determine de novo whether he has made a prima facie showing of personal jurisdiction.").

To make a showing of personal jurisdiction, the nonmovant faces two hurdles. First, he must identify, and bring the nonresident within, the terms of an applicable state long-arm statute. Second, the nonmovant must show that the exercise of personal jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment. See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009); Mitrano, 377 F.3d at 407; English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990).

Inasmuch as our court of appeals has held that the West Virginia long-arm statute is coextensive with the proper reach of due process, In re Celotex Corp., 124 F.3d at 627, the two-part inquiry merges into one, namely, whether the exercise of personal jurisdiction over the nonresident defendant will comport with due process.[1]

---

[1] For the first time in its reply brief, Drummond Ltd. argues that the West Virginia long-arm statute must be satisfied before analyzing personal jurisdiction under due process. Reply at 2. Although our court of appeals has held that the West Virginia long-arm is coextensive with the reach of due process, the West Virginia Supreme Court of Appeals continues to analyze personal

An exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment if "the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Milliken v. Meyer, 311 U.S. 457, 463 (1940)); Mitrano, 377 F.3d at 407; Carefirst, 334 F.3d at 396.  "A defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over him; thus, to justify an exercise of jurisdiction, a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'"  Mitrano, 377 F.3d at 407 (quoting ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997)).  Put another way, "there must 'be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits

---

jurisdiction under the two-step test.  State ex rel. Ford Motor Co. v. McGraw, 237 W. Va. 573, 788 S.E.2d 319 (2016); Nezan v. Aries Technologies, Inc., 226 W. Va. 631, 704 S.E.2d 631 (2010).  However, Bostic has made the requisite prima facie showing that jurisdiction is also proper under the West Virginia long-arm statute.  Drummond Ltd. "transact[s] business in this state," under W. Va. Code § 31D-15-1501(d)(1), by using agents physically in West Virginia to recruit multiple employees from West Virginia, and by hiring and firing Bostic over the phone in West Virginia.  See Pl. Compl. ¶¶ 3, 6, 15.

and protections of its laws.'" Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 213 (4th Cir. 2002) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

"In examining whether the exercise of jurisdiction is reasonable, a distinction is made between specific and general jurisdiction. When the cause of action arises out of the defendant's contacts with the forum, a court may seek to exercise specific jurisdiction." Base Metal Trading, 283 F.3d at 213.

In determining whether specific jurisdiction exists, the court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Mitrano, 377 F.3d at 407 (quoting ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (alteration & internal quotation marks omitted)).

### III. Analysis

Drummond Ltd. insists that it lacks minimum contacts with West Virginia and "has not purposefully availed itself of

the privilege of conducting activities in West Virginia." Drummond's Mem. in Supp. of Mot. to Dismiss at 6.  Further, Drummond Ltd. argues that, as a result of its lack of contacts with West Virginia, and the inconvenience of its defending a suit here, it would be constitutionally unreasonable for the court to assert jurisdiction.  Id.  In support of these contentions, Drummond Ltd. submitted an affidavit from Curtis W. Jones, who serves as corporate counsel and assistant secretary for DCI.

Jones avers, that Drummond Ltd., which is now the relevant defendant in this suit, "is not doing and never has done business in or been authorized to do business in West Virginia."  Aff. of Jones ¶ 7.  Jones further states that Drummond Ltd. "has no operations or employees in West Virginia," and that the company has no officers, directors, or offices in West Virginia.  Id.  He makes similar representations regarding the earlier defendant, DCI.  Id. ¶ 3.  The court notes, however, that Jones's affidavit does not specifically deny that DCI or Drummond Ltd. recruited employees in West Virginia.  Jones states only that the companies do not "conduct business" or "do[] business" in West Virginia.  The briefing submitted by defense counsel regarding this motion appears to embrace a

sufficiently narrow definition of "do[ing] business" that the activity of recruiting employees may not be included within it.[2]

Bostic responds, on the other hand, that sufficient contacts exist for the court to exercise specific jurisdiction over Drummond Ltd. Pl. Resp. at 6-7. In a sworn declaration, Bostic responded to Jones's averments by reaffirming that "[t]he allegations made in paragraphs 3, 6, 14, and 15 of the Complaint filed in this case are correct." Decl. of W. Jeffrey Bostic ¶ 1. Those paragraphs state, in relevant part, that Bostic "was recruited in West Virginia by Defendant through people living in Beckley"; that he "was hired in West Virginia by Defendant in 2013"; that he repeatedly worked in Colombia for two weeks, followed by a week at home in West Virginia; that his employment was terminated by phone at his home in West Virginia; and that he was replaced by a younger West Virginia resident recruited

---

[2] See Drummond's Mem. in Supp. of Mot. to Dismiss at 5-6, 2 ("[T]he plaintiff's Complaint does not even allege that DCI does business in West Virginia. He alleges only that DCI owned property in the state in the 1990's. However, that property was sold in 1997, and the company has not owned any property in West Virginia since that time. Moreover, as noted, DCI does not perform any services in West Virginia, transact any other business within West Virginia, and has no offices, operations or employees in West Virginia. . . . Like DCI, Drummond Ltd. is not doing and never has done business in or been authorized to do business in West Virginia. While Drummond Ltd. operates mines outside of the United States, it has no operations or employees in West Virginia. None of Drummond Ltd.'s officers or directors are based in West Virginia, and Drummond Ltd. has no offices in West Virginia.") (citations omitted).

from within West Virginia. Pl. Compl. ¶¶ 3, 6, 14, 15; Pl. Resp. at 1-2. At all times relevant to this action, Bostic was a West Virginia resident. Pl. Compl. ¶ 1.

Taking these sworn statements in the light most favorable to Bostic, Drummond Ltd. recruited Bostic through people living in Beckley, West Virginia, thereby using one or more of its agents or contacts physically present in West Virginia to do so. Bostic, once he became an agent of Drummond Ltd., in turn recruited an employee for Drummond Ltd. from West Virginia who became Bostic's own successor. Drummond Ltd. also fired Bostic while he was in West Virginia. Because Bostic states that he "was hired in West Virginia," it appears that the employment contract forming the basis of the dispute was made in the State of West Virginia. Bostic suffered the harm of the alleged wrongful discharge in West Virginia, as the company called him there, and he resided there. The court also infers that Drummond Ltd. knew, because it recruited him there and presumably kept appropriate records regarding its employees' residences, that its termination of Bostic would harm a West Virginia citizen and resident.

The court may also infer, from Bostic's assertions, that Drummond Ltd., on multiple occasions, targeted West Virginia as a source of its labor force despite Jones's averment

that it does no business there. It appears, based on these assertions, that Drummond Ltd. regularly employed West Virginia residents and used at least one of them, Bostic, to recruit from within the State.

At the outset, the court notes that a number of other cases have found personal jurisdiction where a defendant employer's relation to the forum state was far more tenuous than it is here. In general, where employers reach into a state to recruit employees, courts have found personal jurisdiction, even when the events giving rise to the suit did not occur in that state. Coats v. Penrod Drilling Corp., 5 F.3d 877, 884 (5th Cir. 1993), opinion reinstated in relevant part on reh'g, 61 F.3d 1113 (5th Cir. 1995) (finding specific jurisdiction proper where nonresident defendant recruited and hired the plaintiff from within the forum, returned the plaintiff to the forum once per year, and returned the plaintiff to the forum for treatment after suffering an injury on the job); Potts v. Cameron Offshore Boats, Inc., 401 F. Supp. 2d 733, 737 (S.D. Tex. 2005) (finding specific jurisdiction proper where nonresident defendant recruited 31 employees including plaintiff from within the forum and where the plaintiff received medical treatment, paychecks, and other payments in the forum); Guyton v. Pronav Ship Mgmt., Inc., 139 F. Supp. 2d 815, 820 (S.D. Tex. 2001) (finding

11

specific jurisdiction proper where the plaintiff was recruited from within the forum by agent of the defendant); Clark v. Moran Towing & Transp. Co., 738 F. Supp. 1023, 1030 (E.D. La. 1990) (finding specific jurisdiction proper where defendant placed an advertisement for employment in a forum state newspaper and interviewed plaintiff for the position in the forum state); but see O'Quinn v. World Indus. Constructors, Inc., 874 F. Supp. 143, 145-46 (E.D. Tex. 1995) (refusing to exercise personal jurisdiction over out-of-state corporation that used independent contractor for recruitment, but noting that, had the recruiter been "an agent of [the defendant employer], [the employer] may have purposefully availed itself").

On the other hand, where the employer did not conduct any direct recruitment activity in a particular state, and the employee "just happened" to live there, personal jurisdiction has been found wanting if the suit's events occur outside the state. Wright v. Zacky & Sons Poultry, LLC, 105 F. Supp. 3d 531, 541 (M.D.N.C. 2015) ("[The defendant] did much to avoid contact with [the forum] and, if anything, purposefully avoided contact with the state while hiring and employing [the plaintiff]."); Williams v. Castro, 21 F. Supp. 2d 691, 694 (S.D. Tex. 1998) ("[W]ithout . . . affirmatively reaching into the [forum state] in order to obtain employees . . . the requisite

minimum contacts just do not exist . . . ."); In the present case, where the allegedly tortious events took place in the state where the employee lived, was recruited, and recruited one who became his own replacement, the claim to jurisdiction is so much the stronger.

### A. Purposeful Availment – Conducting Activities In-State

To begin, defendant's contacts with West Virginia satisfy the first requirement for specific jurisdiction, which requires Drummond Ltd. to have "purposefully availed itself of the privilege of conducting activities in the State." Mitrano, 377 F.3d at 407. The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475. "[W]here the defendant 'deliberately' has engaged in significant activities within a State, . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Id.

Our court of appeals has noted that the purposeful availment "analysis is 'flexible,' and depends on a number of factors that courts consider on a case-by-case basis." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 560 (4th Cir. 2014). In particular, the Fourth Circuit has outlined the following "nonexclusive factors" to guide the inquiry:

> (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) "whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

Id. (quoting Geometric, 561 F.3d at 278) (internal quotations omitted).

In the present case, Drummond Ltd. "reached into the forum state to . . . initiate business" when it reached into West Virginia to recruit Bostic. Id. Further, during at least part of the recruitment, Drummond Ltd. made "in-person contact with [Bostic] in the forum state" using its "agents in the . . . state" to recruit him. Id.

14

In addition, Bostic's allegations show that Drummond Ltd. "deliberately engaged in significant or long-term business activities in the forum state." Id. Drummond Ltd. knew that Bostic would return to West Virginia after each two-week period in Colombia. Drummond Ltd. also fired Bostic by calling his house in West Virginia, thereby causing him to suffer harm in the forum. And Bostic, acting as the company's agent, recruited his own replacement from within West Virginia. Thus, by continually targeting West Virginia in its employment practices and as a source of its labor supply, Drummond Ltd.'s employment activities within West Virginia have been sufficiently "significant or long-term." Id.

These significant interactions establish that Drummond Ltd.'s contacts with West Virginia were not "random, fortuitous, or attenuated." ESAB, 126 F.3d at 625. Drummond Ltd. "expressly aimed" its allegedly tortious conduct and employment practices at West Virginia, see Calder, 465 U.S. at 789, and "'deliberately' . . . engaged in significant activities within" West Virginia, see Burger King, 471 U.S. at 475. As a result, Drummond Ltd. could reasonably expect to be haled into court in West Virginia to account for wrongfully discharging Bostic.

Similar cases from other circuits have produced the same conclusion. In Coats v. Penrod Drilling Corp., for

15

example, the former employee of a United Arab Emirates corporation sued the company for personal injuries sustained while he was working in Dubai. 5 F.3d at 884. The foreign company recruited him in Mississippi when one of its managers "travelled from the United Arab Emirates to Mississippi on vacation and to interview prospective employees." Id. at 880. Much as in the present case, the employee's work took place entirely in the foreign country, and he planned to return to Mississippi only for "thirty days per year of paid vacation," and "at the termination of his employment," which was at an uncertain date. Id. When the employee was injured overseas, the company flew him back to Mississippi for medical treatment. Id. at 881.

The Fifth Circuit found that the Mississippi district court had personal jurisdiction over the foreign corporation. Although the company had no offices, employees, or business in Mississippi, and the plaintiff had worked overseas, the court found that the company's "recruitment activities in Mississippi that led to [the employee's] hiring, such as holding a meeting in the state and buying ads in papers that circulated in the state, are the sort of 'reach[ing] out' to Mississippi that the Supreme Court [has seen] as creating personal jurisdiction." 5 F.3d at 884 (citing Burger King, 471 U.S. at 479). The court

also found persuasive that the employer had an obligation to "return [the employee] [to Mississippi] once a year." Although Bostic has not alleged that Drummond Ltd. had an obligation to return him to West Virginia, Drummond Ltd. likely knew that Bostic would return to his home in West Virginia frequently after fixed periods of work in Colombia. While Drummond Ltd. did not send Bostic to West Virginia, Bostic was already in his home state when he suffered the employer's tortious conduct – a powerful, jurisdiction-conferring fact lacking in <u>Coats</u>.

### B. Claims "Arising Out Of" Contacts

Regarding the second prong of the test for specific jurisdiction, there is no question that "plaintiff['s] claims arise out of [Drummond Ltd.'s] activities directed at the State" – i.e., Bostic's contract for employment, general employment relationship, and subsequent termination. <u>See</u> <u>Mitrano</u>, 377 F.3d at 407. Drummond Ltd. has not contested this point.

### C. Constitutional Reasonableness

The only remaining question is whether the exercise of jurisdiction over Bostic would be "constitutionally reasonable." <u>See</u> <u>Mitrano</u>, 377 F.3d at 407. "[W]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the

serious burdens placed on the alien defendant." Base Metal Trading, 283 F.3d at 213-14.

> This inquiry is guided by the following factors:
>
> (1) the burden on the defendant in litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Geometric, 561 F.3d at 279 (citing Burger King, 471 U.S. at 477).

Drummond Ltd. asserts that the exercise of jurisdiction would be unreasonable because it is an Alabama limited partnership "which has no operations in this state" and does no business in this state. Drummond Ltd. states that "under these circumstances, exercising personal jurisdiction over [it] in West Virginia would be unreasonable and unfair." Drummond's Mem. in Supp. of Mot. to Dismiss at 6-7. Drummond Ltd. essentially points to its lack of presence or business within the state, and the cost of defending the case from afar. The court notes, however, that Alabama is not a distant land. The court observes further that the company's insistence on its lack of "business" in the state, as earlier noted, fails to take into account its recruitment, hiring, and firing of employees here. It would almost certainly be less reasonable to require

Bostic, a resident of West Virginia, who presumably has no "operations" in Alabama, to prosecute a suit there. The State of West Virginia also has an interest in allowing its employees to gain effective, convenient relief from abuse by foreign corporations. None of the other factors described in <u>Geometric</u> provides sufficient reason to believe that an exercise of jurisdiction would be unreasonable.

Moreover, since minimum contacts have been established in West Virginia, an inconvenience to the company is overwhelmed by the plaintiff's right to select a forum of his choosing. Consequently, the exercise of jurisdiction over Drummond Ltd. is not constitutionally unreasonable.

### IV. Conclusion

For the reasons stated above, it is ORDERED that the motion to dismiss for lack of personal jurisdiction be, and hereby is, denied.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

DATED: November 14, 2016

John T. Copenhaver, Jr.
United States District Judge